**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 13-114-DLB**

**JAMES RICKIE BOGGS**                                                                **PLAINTIFF**

vs.                     **<u>MEMORANDUM OPINION AND ORDER</u>**

**CAROLYN W. COLVIN, Acting**                                        **DEFENDANT**
**Commissioner of Social Security**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James Rickie Boggs filed his current application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of October 20, 2009. (Tr. 160-70). Plaintiff's claim was denied initially and on reconsideration. (Tr. 115-25). On April 9, 2012, Administrative Law Judge Maria Hodges held an administrative hearing at Plaintiff's request. (Tr. 28-79). On April 26, 2012, ALJ Hodges ruled that Plaintiff was not entitled to benefits. (Tr. 9-27). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 8, 2013. (Tr. 1-6).

1

On August 8, 2013, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for review. (Docs. # 12 and 15).

## II. DISCUSSION

**A.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469,

474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At Step 2, the ALJ found Plaintiff's degenerative disc disease, osteoarthritis, obesity, adjustment disorder and carpal tunnel syndrome to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15). Before reaching this conclusion, the ALJ determined that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04 (disorders of the spine) because he did not suffer from compromise of a nerve root, spinal arachnoiditis, or spinal stenosis with psuedoclaudication resulting in ineffective ambulation. (*Id.*). The ALJ further found that Plaintiff did not meet the requirements of Listing 12.04 (affective disorders) because he manages many activities associated with daily living, interacts appropriately with family members and has no history of decompensation in work or work-like settings. (*Id.*)

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a reduced range of medium work, with the following limitations:

> The claimant [ ] should have a sit-stand option at one-hour intervals. He can climb ladders, ropes, or scaffolds up to an occasional basis, and he can stoop, kneel, crouch, and crawl up to a frequent basis. Fine finger manipulation with the right upper extremity is limited to no more than a frequent basis. He is limited to simple, routine, repetitive tasks, in a low-stress work environment, with only occasional decision-making required and

only occasional changes in the work setting.

(Tr. 16). The ALJ further noted that the claimant is unable to perform past relevant work as a weatherization instructor or a telecommunications installer. (*Id.*).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 21-33). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the light exertion level as a house sitter (1,700 jobs regionally/74,000 nationally) or non-clerical office helper (2,500 regionally/93,000 nationally). (Tr. 22). The VE further opined that Plaintiff could find work at the sedentary level of exertion as a grader/sorter (2,500 regionally/400,000 nationally), bench worker (2,000 regionally/250,000 nationally) or final assembler (2,700 regionally/200,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (Tr. 22).

**C.     Analysis**

Plaintiff advances four arguments on appeal. First, Plaintiff contends that the ALJ erred in finding that Plaintiff's spinal stenosis was not a severe impairment. Second, Plaintiff argues that the ALJ erred in giving Dr. Lange's assessment the most weight because she was a non-examining state agency consultant who rendered her opinion without reviewing the entire record. Third, Plaintiff asserts that the ALJ failed to give

appropriate weight to Dr. Briggs' specialist opinion. Fourth, Plaintiff complains that the ALJ's hypothetical question to the VE did not properly incorporate Plaintiff's limitations. Each of these arguments will be addressed in turn.

### 1. The ALJ did not err in finding that Plaintiff's spinal stenosis was not a severe impairment

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1521(b). Basic work activities, defined as those "abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The claimant's impairments must have lasted or be expected to last for a continuous twelve month period, unless the condition is expected to result in death. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1509.

When medical reports or laboratory findings demonstrate that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how these symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). Before making this

determination, the ALJ must consider all available evidence, including objective medical evidence, claimant's own statements about symptoms, opinions from treating and examining physicians, and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c)(1)–(3). The claimant's symptoms "will be determined to diminish [his or her] capacity for basic work activities to the extent that [his or her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). For this reason, courts have consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not

6

severe, but finds that other impairments are severe and proceeds with his or her analysis. *Maziarz v. Sec'y Health & Human* Serv., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r,* 299 Fed. Appx. 516, 522 (6th Cir. 2008)(finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

At Step 2, the ALJ concluded that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease; (2) osteoarthritis; (3) obesity; (4) adjustment disorder; and (5) carpal tunnel syndrome. (Tr. 14-15). Having found that Plaintiff suffered from multiple severe impairments, the ALJ proceeded with the disability determination analysis. The ALJ then considered both severe and non-severe impairments in the remaining steps of the analysis. Although not separately treated in the hearing decision, the record reflects that the ALJ did consider Plaintiff's spinal stenosis, as directed by the regulations.[1] At Step 3, the ALJ pointed out that Listing 1.04 (disorders of the spine) "may

---

[1] Plaintiff's argument assumes that spinal stenosis was alleged as a separate impairment. Although the Court gives Plaintiff the benefit of the doubt for purposes of this analysis, it is not entirely convinced that this is the case. For example, the Notice of Reconsideration states that Plaintiff alleged disability due to "degenerative disc disease, chest pain, neck problems, numbness in the arms, a tingling feeling, sleep problems, back problems, hypertension, lack of concentration, emotional stress, and feelings of hopelessness." (Tr. 120–25). At Step 2, the ALJ considered degenerative disc disease, affective disorders, carpal tunnel syndrome and hypertension, ultimately determining that all of these conditions were severe impairments except hypertension. (Tr. 14-15). The ALJ further explained why Plaintiff's

7

also be met by. . . . spinal stenosis with pseudoclaudication, resulting in ineffective ambulation." (*Id.* at 15). However, the ALJ concluded that "none of the medical records establishes findings or symptoms severe enough to qualify under Listing 1.04." (*Id.*).

The ALJ's determination is supported by substantial evidence. Assuming *arguendo* that Plaintiff's spinal stenosis should have been classified as a severe impairment, the error was harmless because the ALJ found that Plaintiff had other severe impairments and completed the disability determination analysis. In accordance with the regulations, the ALJ considered both severe and non-severe impairments, including evidence of spinal stenosis, at subsequent steps in the analysis. Therefore, the ALJ did not err in determining that Plaintiff's spinal stenosis was not a severe impairment.

### 2. The ALJ did not err in giving the most weight to Dr. Lange's opinion

In social security disability cases, medical evidence may come from treating sources, non-treating sources and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.* A non-treating source has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source is an acceptable medical source who has not examined the claimant but provided medical or other opinion evidence in the case. *Id.*

---

hypertension did not constitute a severe impairment. None of these documents indicate that spinal stenosis was alleged as a possible impairment. If anything, spinal stenosis seems to be one way to meet the requirements of Listing 1.04, dealing with disorders of the spine, in which case it is subsumed under the broad term 'degenerative disc disease.'

ALJs must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(d)(2)). If the ALJ decides that the treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

The 20 C.F.R. § 404.1527(d)(2) factors, used to determine how much weight to give a non-controlling opinion from a treating physician, guide the ALJ in determining how much weight to accord a non-treating physician's opinion. *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D. Ohio March 4, 2008). While opinions from non-treating sources typically receive more weight than opinions from non-examining sources, deviation from this general approach is not a *per se* error of law. *Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx. 433, 433 (6th Cir. 2012). For example, an opinion from a state agency medical consultant may be entitled to greater weight than examining or treating source opinions. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)(*quoting* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (July 2, 1996)). This is particularly so when the consultant's opinion is based on a review of the complete case record that "provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

9

After Plaintiff's claim was initially denied, Plaintiff filed his Request for Reconsideration. (Tr. 119). Dr. Amanda Lange, a non-examining state agency medical consultant, was then asked to review the medical records and opinion evidence. (Tr. 92-101). All of these documents, save for a set of treatment records from Morehead Clinic, were available when Plaintiff initially filed his claim. (Tr. 92-94). Based on these documents, Dr. Lange completed a physical RFC assessment, indicating that Plaintiff had a medium RFC with some extertional and postural limitations. (Tr. 98-99). Specifically, Dr. Lange concluded that Plaintiff was limited to lifting or carrying fifty pounds occasionally and twenty five pounds frequently; standing, sitting and walking six hours in an eight hour day, with normal breaks; climbing ladders, ropes and scaffolds occasionally; and stooping, crouching and climbing stairs regularly. (*Id.*).

The ALJ explained that she gave greatest weight to Dr. Lange's opinion because it was "consistent with the overall record, which indicated chronic pain but good neurologic function." (Tr. 20). In support of this proposition, the ALJ noted that Plaintiff's orthopaedic and neurosurgical specialists had recommended conservative care plans. (*Id.*). Consultative examiner Naushad Haziq also reported that Plaintiff demonstrated normal gait, good mobility, good manipulative function and good lower extremity function, despite exhibiting mild to moderate degenerative changes in his back. (*Id.*). The ALJ further approved of Dr. Lange's "restriction to medium exertion, along with the postural and manipulative limits set out in the residual functional capacity, adequately accommodates the effects of degenerative changes." (*Id.*). Accordingly, the ALJ incorporated these limits into Step 4 of her analysis. (*Id.*). Although the ALJ had previously mentioned some discrepancies in Plaintiff's testimony, she nevertheless incorporated an hourly sit-stand

option into the residual functional capacity in an effort to accommodate Plaintiff's subjective complaints. (*Id.*).

Because none of the medical experts who rendered opinions in this case have a treating relationship with Plaintiff, none of these opinions were entitled to controlling weight. Although examining source assessments are typically entitled to greater weight than reports from a non-examining source, the ALJ has some discretion in assigning weight to non-treating sources. For example, ALJs may give opinions from state agency medical consultants more weight due to their experience with these types of cases. In this case, the ALJ, tasked with weighing each opinion according to the 20 C.F.R. § 404.1527(d)(2) factors, took care to explain how much weight she assigned to each source and why. The opinions rendered by Dr. Lange and Dr. Haziq were consistent with the objective medical evidence, which indicated that Plaintiff suffered from degenerative disc disease but retained good mobility and movement. By contrast, Dr. Owens' consultative examination reported non-verifiable radicular symptoms that "do not support the extreme limits placed on standing, walking or sitting, which would not allow the completion of a full-time work schedule at any exertion." (Tr. 20). Having reviewed the ALJ's treatment of the medical source opinions, the Court finds no error.

### 3.     The ALJ did not err in her treatment of Dr. Briggs' treatment notes

As discussed above, the ALJ must weigh the several factors to determine how much weight to give a medical opinion that is not entitled to controlling weight. 20 CFR § 404.1527(d)(2). When that opinion comes from a specialist, his opinion should be given more weight than the opinion of a non-specialist source, provided that the specialist's opinion is related to his area of expertise. 20 CFR § 404.1527(c)(5).

Dr. Briggs, who is affiliated with the Kings Daughters Medical Center Spine and Pain Clinic, saw Plaintiff on six occasions in early 2010. (Tr. 355-91). On one of these visits, Dr. Briggs reported that Plaintiff's "central stenosis is too significant to do epidural injections" and recommended treating the pain "with a Medrol Dose Pack and physical therapy especially with doing traction to try to alleviate his radicular symptoms." (Tr. 382).

Plaintiff attempts to re-characterize Dr. Briggs' treatment notes as a medical source opinion, then argues that this "opinion" is entitled to some weight because Dr. Briggs is a specialist.[2] However, the Court fails to see how the success of this argument would change the outcome of the case. According to Plaintiff, the ALJ should have determined that Plaintiff's spinal stenosis was a severe impairment based on Dr. Briggs' assessment. As the Court has already explained, any error at that stage of the analysis was harmless. Plaintiff also suggests that the ALJ failed to consider Dr. Briggs' impressions at all, but the Court finds that the opposite is true. When describing pain management records made after the alleged onset of disability, the ALJ made several references to Dr. Briggs' treatment notes. Specifically, the ALJ noted that Plaintiff described a constant burning sensation in his neck and showed a limited range of motion, but retained full strength. (Tr. 19). The ALJ also referenced a lumbar MRI, ordered by Dr. Briggs in April 2010, that "showed multilevel degenerative changes, while electrical studies were consistent with carpal tunnel syndrome." (*Id.*). When explaining why she gave Dr. Lange's opinion the

---

[2] The ALJ indirectly refers to Dr. Briggs as one of Plaintiff's "treating orthopaedic and neurosurgical specialists." The record contains treatment notes and medical records from these sources, but none of them rendered an opinion as to Plaintiff's functional limitations. While these documents are certainly relevant medical evidence, they are not opinions that must be weighed according to 20 CFR 404.1527(d)(2). For this same reason, the "treating source" rule is not triggered.

most weight, the ALJ noted that Dr. Lange's opinion was consistent with the "conservative care recommendations" of the "treating orthopaedic and neurosurgical specialists." (Tr. 20). Based on these repeated references to Dr. Briggs' treatment notes, the Court believes that the ALJ gave due consideration to his opinion. Accordingly, the Court finds no error in the ALJ's analysis.

### 4. The ALJ relied on the VE's response to an appropriate hypothetical question

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the ALJ asked the VE to suppose someone with Plaintiff's age, education, work experience and residual functional capacity, and asked whether jobs exist in the national economy for such an individual. (Tr. 21-22). The VE replied that there were, giving representative occupations. (*Id.*). Put another way, the ALJ incorporated the limitations that he found to be credible. Because the ALJ's determinations as to Plaintiff's functional limitations were reviewed above and found to be sound, the Court finds no error in the hypothetical posed to the VE.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 26th day of March, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\13-114 Boggs MOO.wpd